# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 24-311


**CORY WAYNE DARBY**

**VERSUS**

**JORDAN ST. JULIEN MARTINEZ**


\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20211736
HONORABLE ROYALE L. COLBERT, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**WILBUR L. STILES
JUDGE**

\*\*\*\*\*\*\*\*\*\*


Court composed of Elizabeth A. Pickett, Guy E. Bradberry, and Wilbur L. Stiles, Judges.


**AFFIRMED.**

**Chris Villemarette**
**Attorney at Law**
**3404 Moss Street**
**Lafayette, LA 70507**
**(337) 232-3100**
**COUNSEL FOR APPELLANT:**
     **Cory Wayne Darby**

**Jordan St. Julien Martinez**
**In Proper Person**
**712 Rue Des Etoiles**
**Carencro, LA 70520**
**(337) 522-7474**
**COUNSEL FOR APPELLEE:**
     **Jordan St. Julien Martinez**

**Christopher Blyane Martinez**
**In Proper Person**
**712 Rue Des Etoiles**
**Carencro, LA 70520**
**(337) 207-2174**
**COUNSEL FOR APPELLEE:**
     **Christopher Blyane Martinez**

**STILES, Judge.**

Appellant Cory Darby questions the trial court's issuance of a "mutual stay away order," requiring him and the appellees to refrain from a variety of harassing and threatening behaviors. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

The record in this case indicates that the parties, who are neighbors in Carencro, have repeatedly sought the court's assistance due to ongoing friction between members of the two families. Both Mr. Darby and Jordan Martinez filed Petitions for Protection from Stalking in April 2021 following an incident that involved some shouting back and forth as well as some physical altercation. At one point, Mr. Darby's girlfriend, Rhonda Laborde, allegedly fired a firearm into the air. After police responded to the incident, Mrs. Martinez and her husband, Christopher Martinez, were charged with criminal trespassing, and Mrs. Martinez was charged with battery. Ms. Laborde was charged with illegal discharge of a firearm. [1] Temporary Restraining Orders were issued against the parties, ordering that they not harass or go within fifty yards of one another. Before a hearing could be held, however, Mrs. Martinez filed a rule for contempt against Mr. Darby alleging that he violated the protective order by focusing bright security lights into the Martinezes windows.

At a June 24, 2021 hearing, Judge David Smith dismissed the parties' cross motions for petitions for protective orders and issued a Mutual Stay Away Order, effective for one year.

---

[1] The record indicates that the charge was dismissed against Ms. Laborde. The record does not reflect a dismissal of charges against Mr. and Mrs. Martinez.

On August 2, 2021, however, Mrs. Martinez again filed a rule for contempt, complaining that Mr. Darby's son sprayed her house with a water hose and that someone had tried to push over a tree on the Martinez property. Mrs. Martinez maintained that Mr. Darby was doing these things to harass her in revenge for her having animal control remove his dogs. Judge Smith denied the rule for contempt on September 13, 2021.

Friction between the parties continued, with Mrs. Martinez filing another rule for contempt in November 2021, claiming that Mr. Darby's son threw rocks at her house in the middle of the night. Following a hearing, Judge Royale Colbert[2] rendered a January 24, 2022 judgment, which included a determination that the evidence presented established that Mr. Darby's son "threw an object at the Martinez's home on October 29, 2021." Judge Colbert denied the rule for contempt however, noting that the earlier mutual stay away order pertained only to Mr. Darby, not his sons. Judge Colbert extended the existing mutual stay away order to include Mr. Darby, his two sons, and both Mr. and Mrs. Martinez. The order prohibited a variety of harassing behaviors and any physical or electronic contact between the parties.

Central to this appeal, Mrs. Martinez filed a new Petition for Protection from Stalking on October 26, 2023. She again relayed past events and claimed that Mr. Darby, his family, and visitors to his property continued to hurl racial slurs at her, her family, and their guests. Mrs. Martinez also complained of other threatening and harassing behavior such as playing loud, racially offensive music. Due to purported death threats directed to her and her husband, Mrs. Martinez contacted the FBI, the

_____

[2] Judge Colbert was allotted the matter after Judge Smith recused himself on his own motion on November 10, 2021.

Lafayette Parish Sheriff' Office, the United States Attorney, and the NAACP regarding the ongoing issues. Mrs. Martinez also filed a complaint against Mr. Darby's attorney with the Office of Disciplinary Counsel, suggesting that, among other things, he filed a frivolous suit against her on Mr. Darby's behalf. The trial court granted Mrs. Martinez a TRO pending a hearing.

Judge Colbert heard the matter on October 30, 2023 where, as she has done throughout these proceedings, Mrs. Martinez represented herself. Mrs. Martinez, Mr. Martinez, and Sara Adams, Mrs. Martinez's mother, made statements to the court. Mrs. Martinez recited the neighbors' lengthy history and apprized Judge Colbert of the more recent allegations. Mrs. Martinez explained that, not only had she recently heard racial comments and death threats coming from the Darbys' back yard, but she also referenced a recent incident in which Mr. Darby noisily ran the generator of his RV near the property line over the course of a day and night. Mrs. Martinez suggested that Mr. Darby did so to annoy and harass the family for the entire night.

Mr. Martinez offered a brief statement, explaining to Judge Colbert that, although he wanted "comfort," he could not even work in his yard due to "slurs" coming from a "group" behind a fence on the Darby property. Mr. Martinez stated that "it's never just one of them. It's always a group of them." Ms. Adams explained to Judge Colbert that she could not visit the Martinez home and find "peace." Rather, she again alleged that Mr. Darby's girlfriend, Rhonda Laborde, had fired a weapon and hurled racial insults earlier. Ms. Adams also maintained that Mr. Darby "pushed her" and suggested that Mr. Darby had attempted to bait Mrs. Martinez onto his property in order to "charge her with trespassing." She maintained that Mr. Darby "deliberately did a lot of ugly things, sicing his dog on the property, knowing that

3

we cannot enjoy ourselves outside. It's like he would wait for us to go in the house or leave." She stated that he had acted similarly toward her other children.

In his own testimony to the court, Mr. Darby denied allegations about the use of "racial slurs across the fence" or from his yard. He explained that he had "[n]ot as of yet" seen "any video, or anything" to suggest that he or anyone on his property had "used a racial slur" to his neighbors. As for the incident involving the RV, Mr. Darby explained that he had only "tried to plug it up" in order to charge its batteries. He stated that although it is a diesel generator, "it is not loud." Mr. Darby confirmed that he had a pending civil suit against Mr. and Mrs. Martinez arising from their allegations of racial animus.

At the close of the hearing, Judge Colbert reported that "[c]learly, something is going on." While Judge Colbert rejected Mrs. Martinez's racial allegations, he observed that "y'all just don't like each other, but unless y'all want to sell y'all property and they want to sell their property, ya'll have to live together." Judge Colbert expressed particular concern regarding an earlier video showing "some young man throwing rocks over the fence at Mrs. Martinez and their guests" and the fact that one of the incidents involved a gun. Judge Colbert recognized that although the resulting charge against Ms. Laborde was dismissed, the incident nonetheless gave him "pause." He informed the parties that it was not his job to determine where the problems started, but that it was his job to "figure out how we stop it." Judge Colbert took the matter under advisement to "fashion something" to address the parties' needs.

The trial court thereafter entered an October 30, 2023 judgment, dismissing Mrs. Martinez's October 26, 2023 petition for the judge's "further orders." A resulting October 31, 2023 judgment incorporated Judge Colbert's factual findings,

4

including a determination that "both parties in this matter are credible; if somewhat hypersensitive to any perceived action of the other neighbor[.]" The trial court ordered the following:

> IT IS ORDERED that a mutual stay away order is placed into effect between the parties with all of the restrictions and penalties of a protective order, including but not limited to:
>
> - abusing, harassing, assaulting, stalking, following, tracking, monitoring, or threatening each other in any manner whatsoever;
>
> - contacting each other personally or through third parties or via public posting by any means including verbal, written, telephonic, or electronic (text, email, messaging, or social media communication);
>
> - coming within 25 feet of the residence of the other person, their family, members or guests.
>
> Cory Darby is to only run his generator on his RV during daylight hours from 8:00 a.m. to 5:00 p.m.
>
> Cory Darby is further ordered [to] keep his dogs within the confines of his physical property at all times. When the pets are not within the confines of his property, he is ordered to have them on a leash as required by the law.
>
> The Court further orders that this matter is not to be reported in the Louisiana Protective Order Registry.

The trial court assessed costs equally between the parties. The trial court rendered an Amended Judgment on November 8, 2023, changing the listing of those present in court.

Mr. Darby appeals, asserting that: 1) the trial court committed reversible error by failing to require Mrs. Martinez and her witnesses to testify under oath; and that 2) the trial court committed reversible error by failing to allow Mr. Darby to cross-examine Mrs. Martinez or her witnesses.

# DISCUSSION

*Burden of Proof and Standard of Review*

The trial court considered this matter on Mrs. Martinez's Petition for Protection from Stalking pursuant to La.R.S. 46:2171.[3] The legislature has explained that the civil remedy of the protective order affords a victim of stalking immediate and easily accessible protection by summary proceeding. *Id.* At a hearing on a protective order, the petitioner must prove the allegations of his or her petition by a preponderance of the evidence.[4] *Selcer v. Boudreaux*, 20-623 (La.App. 3 Cir. 5/26/21), 318 So.3d 393. Proof is sufficient to satisfy this burden when the entirety of the evidence, both direct and circumstantial, shows that the fact sought to be proved is more probable than not. *Id.* (quoting *Patterson v. Charles*, 19-333, p. 10

---

[3] Louisiana Revised Statutes 46:2171 provides that:

> The legislature hereby finds and declares that there is a present and growing need to develop innovative strategies and services which will reduce and treat the trauma of stranger and acquaintance stalking. The nature of stalking allegations are sometimes not easily substantiated to meet the prosecution's burden of proving the case beyond a reasonable doubt, and victims of stalking are left without protection. Orders of protection are a proven deterrent that can protect victims of stalking from further victimization; however, many victims are forced to pursue civil orders of protection through ordinary process, often unrepresented, rather than through a shortened summary proceeding. Additionally, victims of stalking are not always aware of the vast resource available to assist them in recovering from the trauma associated with being a victim of stalking. It is the intent of the legislature to provide a civil remedy for victims of stalking that will afford the victim immediate and easily accessible protection.

[4] Pursuant to La.R.S. 46:2172, "'stalking'" means any act that would constitute the crime of stalking under R.S. 14:40.2 or cyberstalking under R.S. 14:40.3." In turn, La.R.S. 14:40.2(A) provides that:

> Stalking is the intentional and repeated following or harassing of another person that would cause a reasonable person to feel alarmed or to suffer emotion distress. Stalking shall include but not be limited to the intentional and repeated uninvited presence of the perpetrator at another person's home, workplace, school, or any place which would cause a reasonable person to be alarmed, or to suffer emotional distress as a result of verbal, written, or behaviorally implied threats of death, bodily injury, sexual assault, kidnapping, or any other statutory criminal act to himself or any member of his family or any person with whom he is acquainted.

6

(La.App. 4 Cir. 9/11/19), 282 So.3d 1075, 1083). A trial court has wide discretion in granting a protective order, which an appellate court will reverse only upon a showing of an abuse of discretion. *Id.*

*Witness Testimony*

Both of Mr. Darby's assignments of error stem from the fact that the trial court conducted the hearing on Mrs. Martinez's request for a protective order in an unstructured, conversational style. For instance, the transcript indicates that the trial court opened the hearing simply with "Okay, Ms. Martinez, it's your motion. What's going on now?" Mrs. Martinez, representing herself, responded to the trial court's inquiry by relating the parties' history and then moving on to allegations surrounding the more recent occurrences. Mr. Martinez and Ms. Adams related their observations and complaints to the trial court as well. The record does not indicate that Mrs. Martinez, Mr. Martinez, or Ms. Adams were placed under oath before providing their statements.

When the trial court turned the podium over to Mr. Darby's counsel, Mr. Villemarette, he more formally stated that he "would like to call Mr. Darby as a witness, since we are going to do this right way, sir." The trial court responded "Please do." Thereafter, Mr. Villemarette called Mr. Darby and Ms. Laborde to the stand. Both were sworn under oath before answering Mr. Villemarette's questions. When prompted by the trial court, Mrs. Martinez declined to ask either Mr. Darby or Ms. Laborde further questions.

After some additional back and forth between the witnesses and Mr. Villemarette as well as interjections from the trial court, the trial court expressed concern over the state of affairs between the parties before taking the matter under advisement.

In his first assignment, Mr. Darby notes that Mrs. Martinez, Mr. Martinez, and Ms. Adams testified without being sworn and suggests that their statements cannot therefore be verified. He contends that Mrs. Martinez presented no other evidence in support of her claims of harassment. Mr. Darby points out that, in contrast, he and Ms. Laborde denied Mrs. Martinez's allegations "under oath and subject to cross examination."

As Mr. Darby notes, both La.Code Civ.P. art. 1633(A) and La.Code Evid. art. 603 provide that "[b]efore testifying, every witness shall be required to declare that he will testify truthfully, by oath or affirmation administered in a form calculated to awaken his conscience and impress his mind with his duty to do so." Mr. Darby thus argues that the trial court should not have considered Mrs. Martinez's unsworn testimony or that of her witnesses. *Citing Searles v. Searles*, 08-1098, pp. 3-4 (La.App. 1 Cir. 3/27/09), 9 So.3d 997, 999 ("The statements made by the parties were not evidence on which the trial court could rely to render judgment in this matter because the statements were not sworn to nor were the parties subject to cross-examination regarding the statements made."). He maintains that the trial court's order was therefore without an evidentiary basis and argues that it must be vacated. Mr. Darby's suggestion does not account for a number of factors, however.

First, the trial court's observations at the hearing as well as the factual findings reflected in the judgment indicate that the trial court took judicial notice of the parties' history.[5] Louisiana Code of Evidence Article 201(C) specifically permits a trial court

---

[5] The judgment reflects that:

The Court makes note that since April 4, 2021 the parties have filed several protective orders against each other alleging threats of physical violence. The Court further notes that the parties are next door neighbors and that there has been at least one incident involving the dogs of [] Cory Darby biting Jordan Martinez resulting

8

to take notice of adjudicative facts, whether requested or not. "A judicially noticed fact must be one not subject to reasonable dispute in that it is either: (1) Generally known within the territorial jurisdiction of the trial court; or (2) Capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." La.Code Evid. art. 201(B).

The appellate record in this case, which includes pleadings dating to 2021, substantiates the trial court's findings regarding the hostilities between the parties. The record includes repeated pleas for protection due to allegations of both verbal and physical threats. Law enforcement officials have been called to the property on numerous occasions and, on at least one occasion, a report was made of threats involving firearms. *See Aguillard v. Aguillard*, 20-64 (La.App. 3 Cir. 11/4/20), 305 So.3d 955 (wherein this court reviewed the trial court's issuance of a permanent protective order and concluded that La.Code Evid. art. 201 permitted the trial court to take judicial notice of evidence previously presented and made part of the public record). *See also Milam v. Hughes*, 22-407, p. 9 (La.App. 1 Cir. 12/29/22), 360 So.3d 852, 859 (wherein a panel of the first circuit maintained a protective order when the

---

in a civil lawsuit where Mr. Darby paid Mrs. Martinez a settlement. Mr. Martinez stated that Cory Darby uses his dog as a means of threats and intimidation.

The Court further noted that in the prior restraining order it was affirmatively proved that a visitor to the home of Cory Darby did throw rocks at the Martinez[es] over the fence. This was proved by a video wherein it was believed that the assailant was the son of Cory Darby and another visitor. The video was hazy and therefore Mr. Darby's son could not be positively identified; however the rock thrower was clearly on the property of Mr. Darby.

. . . .

The Court also takes note that several police reports have been filed by both parties against each other throughout the years each alleging breaches of the peace. The Court further notes that Cory Darby has been cited no less than four times for leash law violations involving his dogs.

9

trial court not only weighed evidence presented and assessed the credibility of witnesses, but further "took judicial notice of the many incidents of abuse, as well as prior judicial proceedings[.]"). Further, Judge Colbert was personally familiar with the history of the case as he has presided over this matter since the November 2021 recusal of Judge Smith.

Moreover, while Mr. Darby complains that Mrs. Martinez and her witnesses provided statements to the trial court without having been sworn, it is important to note that the "trial judge has great discretion in the manner in which the proceedings are conducted before the court, and it is only upon a showing of a gross abuse of discretion that appellate courts have intervened." *D.M.S. v. I.D.S.*, 14-364, p. 17 (La.App. 4 Cir. 3/4/15), 225 So.3d 1127, 1138, *writ denied*, 15-897 (La. 6/19/15), 172 So.3d 654. In this instance, the trial court conducted the hearing as a summary proceeding designed to afford a victim immediate and easily accessible protection through a shortened, summary proceeding. *See* La.R.S. 46:2171. The conversational style in which the trial court conducted the hearing reflects that posture as well as the fact that Mrs. Martinez was unrepresented. Significantly, Mr. Darby's counsel did not object to the manner which the trial court proceeded nor did counsel object to Mrs. Martinez, Mr. Martinez, or Ms. Adams addressing the court without having been sworn.

In *Patterson v. Charles*, 19-333, pp. 32-33 (La.App. 4 Cir. 9/11/19), 282 So.3d 1075, 1096, the fourth circuit reviewed a defendant's complaint that she was denied procedural due process when the trial court proceeded to a hearing for a protective order without "opportunity to urge pre-trial motions, to seek counsel, to prepare a defense, or to cross-examine the opposing party." Pointing out that a trial court has discretion in determining how proceedings are conducted, the panel found no abuse

of discretion in the matter before it when the appellant "appeared, testified, and was addressed by the trial court and thus had the chance to raise any issues in the proceedings, including, any pre-trial concerns, her lack of representation, her ability to cross-examine Patterson, etc., but failed to do so." *Id.* The appellant in *Patterson* "did not lodge any objections at the trial on the protective order." *Id.* Given those considerations, the fourth circuit concluded that the appellant was "given a meaningful opportunity to be heard[,]" undermining the appellant's contention that she was not afforded procedural due process.

Likewise, despite being represented by counsel, Mr. Darby did not complain of the method by which the trial court conducted the hearing and, specifically, did not object to the fact that the trial court spoke with Mrs. Martinez and her witnesses without being placed under oath. *See State ex rel. J.F.*, 07-1496, p. 6 (La.App. 3 Cir. 5/14/08) (unpublished opinion) (2008 WL 2042813) (finding no merit in the assertion that the trial court violated La.Code Evid. art. 603 in allowing the unsworn testimony of a caseworker and noting, in part, that the appellant lodged "no contemporaneous objection" to the alleged error).

Finally, we also point out that Mrs. Martinez instituted this matter by Petition for Protection from Stalking, advancing her allegations under oath.[6] Mrs. Martinez

---

[6] Mrs. Martinez verified her allegations as follows:

> I am the petitioner in this Petition for Protection from Stalking or Sexual Abuse. I have read the allegations contained therein and declared them to be true and correct to the best of my knowledge[,] information, and belief. Further I believe that the defendant poses a threat to my safety and/or to the child(ren) or to others for whom I have requested relief[.]
>
> I am aware that any false statement made under oath contained in the foregoing petition and this affirmation may constitute perjury pursuant to R.S. 14:123[.]
>
> I have made this affirmation before the witness who signed below on 10/26/23.

and her witnesses' statements to the trial court were largely duplicative of the allegations and grievance previously presented to the court.

In light of these circumstances, we find no merit in Mr. Darby's contention that the trial court's judgment lacked an evidentiary basis.

*Cross Examination of Witnesses*

Neither do we find merit in Mr. Darby's further contention that the trial court did not afford him an opportunity to cross-examine Mrs. Martinez, Mr. Martinez, or Ms. Adams. After Mrs. Martinez concluded her presentation to the court, the trial court turned the matter over to Mr. Darby's counsel with the open-ended question of, "Mr. Villemarette?" Mr. Villemarette did not, in turn, seek to question Mrs. Martinez or her witnesses. Instead, Mr. Villemarette called Mr. Darby and Ms. Laborde as witnesses. Following their testimony, Mr. Villemarette stated: "That's all. Thank you, Judge." When the trial court inquired, "Anything else?[,]" he responded "No, sir."

Despite the fact that the trial court solicited further participation, counsel did not seek to question Mrs. Martinez or her witnesses or suggest to the trial court that the informal proceedings deprived him of any opportunity to challenge Mrs. Martinez in any regard. Thus, we find no merit in Mr. Darby's contention that "the trial court did not afford the opportunity to cross-examine Mrs. Martinez or her witnesses." Rather, the record indicates that he did not take advantage of the opportunity to do so. *See Patterson*, 282 So.3d 1075; *State ex rel. J.F.*, 07-1496.

This assignment of error lacks merit.

---

The verification bears the signature of both Mrs. Martinez and of a witness.

**DECREE**

For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this proceeding are assessed equally to Appellant Cory Darby and Appellee Jordan Martinez.

**AFFIRMED.**